Tuesday                    25th

April, 2006.


AM Liner East, Inc. and
   NorGuard Insurance Company,                                         Appellants,

 against            Record No. 1639-05-2
                    Claim No. 216-93-29

David T. Osburn,                                                       Appellee.


From the Virginia Workers' Compensation Commission


On April 3, 2006 came the appellee, by counsel, and filed a motion praying that the Court vacate

the opinion rendered herein on March 21, 2006, asserting that the parties had previously settled the

matter.

Thereupon came the appellants, by counsel, and filed a response in opposition thereto.

Upon consideration whereof, the mandate entered herein on March 21, 2006 in this matter, as

well as the corresponding opinion released on that date, hereby are vacated, and the appeal is reinstated

on the docket of this Court.


A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:    Chief Judge Fitzpatrick, Judge McClanahan and Senior Judge Willis
Argued at Richmond, Virginia


AM LINER EAST, INC. AND
  NORGUARD INSURANCE COMPANY

                                                  OPINION BY
v.        Record No. 1639-05-2                JUDGE JERE M.H. WILLIS, JR.
                                                  MARCH 21, 2006
DAVID T. OSBURN


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

William S. Sands, Jr. (John C. Duncan, III; Duncan and Hopkins,
P.C., on briefs), for appellants.

Gerald G. Lutkenhaus for appellee.


AM Liner East, Inc. and its insurer (hereinafter referred to as "the employer") filed an

application seeking to terminate David T. Osburn's temporary total disability (TTD) benefits and

suspension of those benefits pending decision on the application.  The commission rejected the

employer's application, holding that it failed to provide probable cause to believe it meritorious.

The employer appeals.  Because we find that the commission abused its discretion in rejecting

the employer's application, we reverse the commission's decision and remand this case for

referral to its hearing docket.

## Background

On September 6, 2003, Osburn was involved in a motor vehicle accident while working

for the employer, which accepted the accident as compensable.  The parties filed agreement

forms stating that Osburn had sustained multiple injuries, that he was disabled, and that he was

entitled to temporary total disability (TTD) benefits beginning September 7, 2003 and

continuing.  On December 31, 2003, the commission entered an award memorializing this agreement.

On January 4, 2005, at the employer's request, Dr. Betsy Blazek-O'Neill, an occupational medical specialist, examined Osburn.  Dr. Blazek-O'Neill also reviewed Osburn's medical records, x-rays, a cervical MRI dated 11/26/03, a lumbar MRI dated 7/16/04, a cervical CT-myelogram dated 4/21/04, and his functional capacity evaluation (FCE) performed on December 9, 2004.  In Dr. Blazek-O'Neill's seven-page January 4, 2005 report, she opined that the level of capability indicated in the FCE report of "light to medium level" "did not appear to be a valid result."  She noted that Osburn "demonstrated markedly exaggerated pain behavior during the history and physical examination with very dramatic and histrionic comments, tearfulness, flinching, guarding, and grimacing."  She reported that he had "a non-physiologic gait pattern and non-dermatomal sensory changes."  She noted that his gait did not change significantly when walking with or without his cane.  Finally, she opined:

> I am unable to propose any physiologic mechanism for any symptoms that Mr. Osburn is currently reporting.  His symptoms are bizarre and non-physiologic.  They are not consistent with the abnormalities present on his diagnostic studies.  The disc abnormality at C5-6 on the right has actually improved over time since Mr. Osburn's injury although he is reporting progressively worsening symptoms.  The location of the patient's symptoms have been inconsistent from one physician visit to another in a manner that cannot be explained on a physiologic basis.

> It is my opinion within a reasonable degree of medical certainty that Mr. Osburn has fully recovered from his work injury of 9/6/03.  The symptoms that he continues to report are actually most consistent with malingering, because of their changing and non-physiologic nature.  The patient has a history of depression, currently treated with Cybalta.  This is unrelated to his work incident of 9/6/03.

> Mr. Osburn no longer requires treatment for problems related to the 9/6/03 work incident.  He does not require any medications for problems related to the incident.  There is no evidence of reflex sympathetic dystrophy, complex regional pain syndrome,

> radiculopathy, or fibromyalgia. The patient is capable of working
> at his full duty position effective immediately without restriction.

Dr. Blazek-O'Neill also approved a job description describing Osburn's pre-injury laborer position with the employer, and signed a "Physician's Affidavit of Recovery" under oath, stating that Osburn had fully recovered from his work injury and was capable of resuming his pre-injury position without restrictions as of January 5, 2005.

On February 24, 2005, the employer filed an application seeking to terminate Osburn's outstanding award of TTD benefits based upon Dr. Blazek-O'Neill's January 4, 2005 report with attachments, including the job description and Physician's Affidavit of Recovery and seeking suspension of his benefits pending decision on the application.

In response, Osburn submitted (1) a report from Dr. Maria E. Simbra, a neurologist, dated June 16, 2004, (2) January 31, 2005 discharge instructions from Dr. Robert L. Greico, and (3) records from Dr. Michael Cozza dated January 10, 2005 and March 4, 2005.

Dr. Simbra's June 16, 2004 report stated that in consultation she examined Osburn and reviewed his medical records on that date. She opined that he had "chronic pain." Based upon his complaints of numbness and weakness on the right, she ordered an MRI of his brain. She concluded that " [i]f there are no abnormalities that need to be addressed on the MRI scan, he can return on an as needed basis."

Dr. Greico's January 31, 2005 discharge instructions indicated a diagnosis of "myofascial pain syndrome" with follow-up in six weeks. Dr. Cozza's "Return to Work Evaluation" dated January 10, 2005, indicated that Osburn could perform light work with certain restrictions with respect to lifting, standing, sitting, and climbing. A prescription slip dated January 10, 2005 completed by Dr. Cozza indicated that Osburn "[m]ay return to light duty work on 1-13-05." Dr. Cozza's March 4, 2005 Attending Physician's Report stated that Osburn's disability began September 17, 2003 and that he was capable of returning to light duty work as of January 13,

2005. Dr. Cozza diagnosed Osburn as suffering from "[p]ost traumatic fibromyalgia s/p whiplash injury; cervical DDD."

Osburn did not file a copy of his December 9, 2004 FCE until after the expiration of the 15-day period allowed by Rule 1:5(C) for submitting responsive evidence to the employer's application. Accordingly, the commission noted that the full FCE report was not in evidence. However, the commission acknowledged Dr. Blazek-O'Neill's conclusions regarding the FCE findings because her report was before it.

Based upon this record, the Senior Claims Examiner rejected the employer's application, holding that it did not provide probable cause to grant a hearing and suspend compensation. In so ruling, the Senior Claims Examiner found as follows:

> In weighing, analyzing and balancing the medical evidence presented in support and in opposition to the Employer's Application for Hearing, it is apparent that the injured worker has not been released to return to pre-injury work. The Commission has consistently afforded greater weight to the opinion of the treating physician, rather than that of a physician that examines the employee on only one occasion.

(Citations omitted.)

On review, the commission affirmed the Senior Claims Examiner's determination, finding as follows:

> It is well settled that where there is a conflict in the medical evidence, the Commission typically affords greater weight to the attending physician's opinion than to the views of another physician whose involvement is upon a consultative basis only.

> In making a probable cause determination, the Senior Claims Examiner is allowed to weigh the medical evidence. In previous cases where the competing evidence on a probable cause determination consisted of an opinion from an employer's independent medical examiner releasing the claimant to work and several contrary reports from the claimant's treating physician, we have upheld the rejection of the employer's application.

- 4 -

In his January 10, 2005 disability slip, Dr. Cozza, the claimant's treating physician, opined that the claimant is partially disabled and limited to light work with several restrictions. Dr. Cozza's March 4, 2005 Attending Physician's Report similarly reflects that the claimant remains restricted to light duty and that the date he would be able to return to regular work is unknown. The IME report relied upon by the defendants discusses and disagrees with a functional capacity evaluation report dated December 9, 2004, which apparently revealed that the claimant was capable of work at a light to medium job level. Under these circumstances, we cannot find that it was error for the Senior Claims Examiner to accord greater weight to the reports of the claimant's treating physicians than to the single independent medical report from Dr. Blazek-O'Neill.

(Footnote and citations omitted.)

The employer argues that Dr. Blazek-O'Neill's report was sufficient to put the question of Osburn's ongoing disability at issue. It argues that the medical evidence reflects more than just a disagreement between the treating physician and the IME physician over the extent of Osburn's disability. Rather, it argues, Dr. Blazek-O'Neill's report challenges Osburn's credibility, Dr. Cozza's diagnosis of fibromyalgia, and the validity of the FCE. The employer argues that rejection of its application denied it the opportunity to litigate whether Osburn is still disabled as a result of the September 6, 2003 accident. It argues that the commission's "pre-deciding a case where substantial, material issues regarding diagnosis and credibility have been raised, explained, and documented" was an abuse of discretion and denial of due process.

Analysis

This appeal involves the application of the commission's pre-hearing procedural rules to the facts of this case. To carry out the provisions of the Workers' Compensation Act, the commission has the power to make and enforce rules not inconsistent with the Act. See Code § 65.2-201. When a challenge is made to the commission's construction of its rules, "our review is limited to a determination whether the commission's interpretation of its own rule was reasonable." Classic Floors, Inc. v. Guy, 9 Va. App. 90, 93, 383 S.E.2d 761, 763 (1989).

"Under Commission Rule 1.4(A) and (B), an employer's application for hearing based upon a change in condition must be in writing and under oath and must state the grounds for relief and the date for which compensation was last paid." Circuit City Stores, Inc. v. Scotece, 28 Va. App. 383, 386, 504 S.E.2d 881, 883 (1998).

> An employer's application for hearing will be deemed not "technically acceptable" and will be rejected unless the employer's designated supporting documentation is sufficient to support a finding of probable cause to believe the employer's grounds for relief are meritorious. The commission has defined the standard of "probable cause" as "[a] reasonable ground for belief in the existence of facts warranting the proceeding complained of."

Gallahan v. Free Lance Star Publ'g Co., 41 Va. App. 694, 703, 589 S.E.2d 12, 17 (2003) (quoting Circuit City, 28 Va. App. at 386-87, 504 S.E.2d at 883) (internal citations omitted)). At this preliminary stage, whether an employer is entitled to a suspension of benefits and to a hearing on the merits of its application hinges upon whether its application is "technically acceptable." See Rule 1.5(C). Plainly, under this standard, it is not appropriate for the commission to balance the employer's supporting documentation against competing medical evidence. Rather, the issue is whether the documentation supporting the application, if believed, supports review. Dr. Blazek-O'Neill's report and supporting documentation plainly satisfies this requirement. The report sets forth facts and findings that, if believed, justify review. The issue before the commission was not whether in light of all the evidence Osburn's award should be terminated, but whether employer's supporting documentation justified review, consistent with the probable cause standard set forth in Giant of Virginia, Inc. v. Pigg, 207 Va. 679, 152 S.E.2d 271 (1967), adopted by the commission in Keys v. Lifetouch National School Studio, 98 WC UNP 1878467,VWC File No. 187-84-67, 1998 Va. Wrk. Comp. LEXIS 5088 (Dec. 22, 1998), satisfies this requirement.

Accordingly, we hold that the commission erred in finding that the employer's application and supporting documentation was insufficient to provide probable cause to warrant the relief sought. The employer's application was "technically acceptable." The commission, in contravention of its own rules, erroneously balanced the employer's application and supporting documentation against competing medical evidence and resolved the weight of the evidence without affording the employer a hearing. This was an abuse of discretion.

For these reasons, we reverse the commission's decision and remand this case for referral of the employer's application to the hearing docket.

<u>Reversed and remanded.</u>

Fitzpatrick, C.J., dissenting.

I respectfully dissent from the majority opinion and would affirm the commission's decision finding that there was insufficient evidence to refer the employer's application to the hearing docket.

> An employer's application for hearing will be deemed not "technically acceptable" and will be rejected unless the employer's designated supporting documentation is sufficient to support a finding of probable cause to believe the employer's grounds for relief are meritorious. The commission has defined the standard of "probable cause" as "[a] reasonable ground for belief in the existence of facts warranting the proceeding complained of."

Gallahan v. Free Lance Star Publ'g Co., 41 Va. App. 694, 703, 589 S.E.2d 12, 13 (2003) (quoting Circuit City Stores, Inc. v. Scotece, 28 Va. App. 383, 386-87, 504 S.E.2d 881, 883 (1998) (internal citations omitted)). See also Giant of Virginia, Inc. v. Pigg, 207 Va. 679, 684, 152 S.E.2d 271, 275 (1967).

"The general rule is that when an attending physician is positive in his diagnosis of a disease, great weight will be given by the courts to his opinion." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986) (citing McPeek v. P.W.&W. Coal Co, Inc., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969); Baltimore v. Benedict Coal Corp. 182 Va. 446, 453, 29 S.E.2d 234, 237-38 (1944); Bristol Builder's Supply Co. v. McReynolds, 157 Va. 468, 471, 162 S.E. 8, 9 (1932)).

In the instant case, the employer's supporting documentation was a medical report from a one time medical evaluation procured by the employer that directly contradicted the treating physician's opinion. The claims examiner rejected the application, and the employer appealed that decision to the commission. In upholding the claims examiner's decision, the commission resolved both the weight and value of the employer's evidence and found it insufficient to meet the requisite probable cause standard. To reach this conclusion, the commission accorded

"greater weight to the attending physician's opinion than to the views of another physician whose involvement is upon a consultative basis only." "The determination whether the employer has met its burden is made by the Commission after exercising its role as finder of fact. In this role, the Commission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions." Bass v. City of Richmond Police Dept., 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999).

In performing this role, the commission specifically noted that the claimant's treating physician, Dr. Cozza, opined that the claimant remained partially disabled, limited to light duty work with numerous restrictions and that his return to work date was unknown. While the independent medical evaluation of Dr. Blazek-O'Neill relied on by the employer disagreed with this contention, I do not believe that it is our role to dictate the weight the commission must accord to this evidence or resolve the evidentiary conflict.

Thus I would affirm the commission's decision to reject employer's application for hearing and the suspension of claimant's benefits pending the hearing.